## MARY CHASE *vs.* JOB CHASE.

*It seems,* that a right of action for slander of a wife during coverture may be enforced by her in her own name after a divorce *a vinculo.*

A decree of divorce *a vinculo,* obtained in another state, between parties residing in this state, for a cause which would not be a cause of divorce in this state, and at the suit of a party who went into that state for the purpose of obtaining it, is void in this state, by the Rev. Sts. *c.* 76, § 39; even if the other party appeared and answered to that suit.

Evidence that a wife went into another state, and immediately, while she and her husband still resided in this state, applied for and obtained a divorce *a vinculo* for causes which would not be causes of divorce in this state, warrants the inference that she went into that state in order to obtain a divorce.

SHAW, C. J. The report in this case presents a question of law for the consideration of the whole court, preliminary in its nature, which, if decided against the plaintiff, precludes the necessity of considering other questions raised at the trial.

It is an action of tort for verbal slander; and the preliminary question is, whether the plaintiff can maintain such an action in her own name and right, as a *feme sole,* under the circumstances disclosed by the report. Job Chase, the defendant, now an old man, lives, and for his whole life, or for many years, has lived, at Harwich in the county of Barnstable. The plaintiff, Mary Chase, was married on the 20th of November 1833, at Enfield in Massachusetts, to Darius Chase, son of the defendant; they first went to live at Harwich, and lived at that place some time, and afterwards at various places, and ultimately at Weston in this state. There was evidence tending to show that Darius Chase, the husband of the plaintiff, was living at Weston in Massachusetts not long before the proceedings hereinafter mentioned were instituted in the county of Cumberland in the State of Maine.

By the record produced by the defendant, it appears that the husband of the plaintiff, Darius Chase, filed a libel for divorce against his wife in Maine on the 16th of March 1852. It was entered at the supreme judicial court in Cumberland county at April term 1852, and continued to October term following, and personal notice to the wife ordered. In the libel, the libeliant is

described as of Portland; no residence of the libellee is stated, but it appears by the record that she was served with notice as a resident of Palmer, Massachusetts.

In looking at this libel, it is manifest that the grounds set forth are not such as would be grounds of divorce *a vinculo* under the laws of Massachusetts. They consist of allegations of ill temper, neglect of duty to her husband and children, and actual cruel treatment, and frequently leaving his home, and one instance is specified in October 1849, two and a half years before the filing of the libel. To this libel the respondent appeared and filed an answer, denying the allegations against her, and alleging various species and acts of misconduct on his part towards her. The court, on a hearing in December 1852, granted the divorce prayed for by the husband.

By another record of the same court, at the same October term 1852, it appears that a cross libel, or counter libel, was filed by the wife against the husband on the 25th of October 1852. On this an order of notice was granted, returnable on the 9th of November 1852. The libel avers good conduct on her part as a faithful wife, and alleges a long course of abusive and cruel conduct on his part, and prays for a divorce and the cus-tody of her children, and alimony. It sets forth no facts which would be a legal cause for a divorce *a vinculo* in Massachusetts; but each alleges the misconduct of the other as causes for which the libellants in both cases pray for divorce, by force of the stat-ute of Maine authorizing the court to grant divorces, where the same are reasonable and proper, conducive to domestic harmony, and for the good of the parties, and the welfare and morality of society. The respondent appeared and answered, and upon a hearing, the court, on the 7th of December 1852, found the mate-rial allegations satisfactorily proved, and decreed a divorce from the bonds of matrimony for the causes alleged, custody of chil-dren to the wife, and a sum payable to the wife towards support of the children, and she to retain articles of personal property and wearing apparel of the children.

When this case came on to be tried, it appearing upon the evidence, and being admitted, that, at the time of the alleged

slander in October 1851, and at the time the cause of action accrued, the plaintiff was a married woman, it was objected that the action could not be maintained. To this the plaintiff answered, that after the cause of action accrued, and before the commencement of this action, a decree of divorce was passed by the supreme judicial court of Maine in December 1852, by which the bonds of matrimony between her and the said Darius were dissolved.

The defendant insisted that, the right of action and the right of damages having vested in the husband, although during coverture the wife must be joined for conformity, even the divorce would not devest the husband's right and transfer the exclusive right to the wife. We should certainly have great doubts whether such a proposition could be maintained, because the damage is personal to the wife ; and we should be inclined to think the action would survive to her solely, as in case of the death of the husband, if not recovered, released or satisfied before the divorce. But the defendant, not relying much on this answer, submitted another, namely, that the divorce granted by the supreme judicial court of the State of Maine, at the suit of the wife, was void, because the same court, at the same term, had granted a divorce at the instance of the husband, by which the bonds of matrimony were already dissolved, on the ground that she was the guilty party.

But it being manifest that a valid decree of divorce *a vinculo*, at the suit of either party, would place her in the condition of a *feme sole*, it would be immaterial, for the purposes of this trial, whether the decree was obtained at the instance of the wife or of the husband ; if the decree at the suit of the husband was valid, it would be equally efficacious so far as this action is concerned. It did not appear that the plaintiff had ever resided with her husband in the State of Maine. The question therefore came before the court, whether the action could be maintained ; and the court was requested to direct, as on a motion for a nonsuit, that the action could not be maintained. With a view to this motion, the defendant offered in evidence a declaration of the plaintiff, made on one occasion,

after these divorces, that her husband went to reside in the State of Maine for the purpose of obtaining a divorce from her.    But there was no evidence that she went there for that purpose, unless it appears from said records, and from the fact of her being described in the writ in this suit, commenced soon after the divorce, as of Boston, Massachusetts.

The defendant also offered in evidence the declarations of the husband, to show that he went to reside in Maine for the pur pose of obtaining a divorce, but this was rejected.

Upon the records aforesaid, and the evidence above stated, the defendant contended, and requested the court to rule, that the plaintiff could not maintain this action in her own name.

It was thereupon agreed by the parties, for the purpose of trying the facts and merits, that the court should overrule the objection. *pro forma*, reserving to the defendant, should the verdict be against him, the right to carry this question before the whole court for their adjudication.    If, in their opinion, the plaintiff is not entitled to maintain her action as sole plaintiff, the verdict is to be set aside, and judgment rendered for the defendant.

The question was upon the validity of these divorces, or of either of them, to dissolve the bonds of matrimony.    So far as this depended on matter of fact, it would have been, without the above agreement, a question for the jury.    The effect of this agreement, we think, was to withdraw all the questions of fact, on which the validity of the divorce depended, from the jury, and submit them on the evidence, together with the questions of law, to the decision of the whole court.

1. The court are of opinion that if the divorce was obtained by a party in another state, for causes occurring in this state, in a case where the parties were not, and never had been living together in that state, if the party obtaining it had gone into such state in order to obtain a divorce, for causes which would not authorize a divorce by the laws of this state, such divorce is expressly made void in this state for all purposes.    Rev. Sts. *c.* 76, § 39.    The rule had been substantially adopted before the revised statutes, as a rule founded on considerations of reason,

policy and justice. *Barber* v. *Root,* 10 Mass. 260. *Jackson* v *Jackson,* 1 Johns. 424.

If the divorce obtained by the wife could be considered as an original proceeding in Maine, without reference to the pending libel of her husband, it is quite clear that it would be within the prohibition of this statute ; because it appears on the face of the libel that she was then of Palmer in Massachusetts, and she must be presumed to have gone there in order to get a divorce, because she immediately proceeded to file her libel for that purpose ; and it appears on the face of her libel that she there claimed a divorce for causes which did not occur in that state, but mostly in the State of Massachusetts, and, what is more essential, for causes which would not warrant a decree of divorce *a vinculo* by the laws of this state.

But supposing she relies on the divorce obtained by her husband ; it in like manner appears that it was claimed for causes arising in this state, and for causes which would not warrant a divorce by the laws of Massachusetts.

2. Nor would such a divorce be made good by the appearance of the respondent. The express provision of the statute, declaring that such divorce shall be of no force or effect in this state, is not made for the benefit of a party, which may be waived by an appearance or otherwise ; but it is made upon high considerations of general public policy and public interest, the provisions of which cannot be waived. Appearance is evidence only of consent, and express consent would be of no avail. ·

3. Nor is there any ground to object that this decree must be considered valid till avoided by some proceeding between the parties. It is a general rule, that a party is not bound by a judgment to which he is not party or privy; but he may show by plea and proof that such judgment is void. *Downs* v. *Fuller,* 2 Met. 135. *Duchess of Kingston's case,* 20 Howell's State Trials, 355.

4. The only difference between the two cases is, that it does not so distinctly appear that the wife went to Maine in order to get a divorce. But supposing it a question of fact for the jury, we are of opinion that a jury would be ·well warranted in draw

14*

ing the inference, that she went into Maine for the purpose of procuring a divorce. The parties never lived together in Maine. Every person may be presumed to intend to do what he in fact does. Shortly after going to Maine, no other cause appearing, he applies for a divorce *a vinculo.*

He knew that his wife was living in Massachusetts, and caused notice to be given to her there; he had a purpose of getting a divorce; he could not get it in this commonwealth, for reasons already stated. The conclusion is strong, that he applied for a divorce in Maine because he could not get one in Massachusetts.

Though a question of fact, it is a question of intent—an act of the mind—which can only be learned by external circumstances.

Her own declaration to that effect, after the divorce and after this suit commenced, is competent, and of some weight, though not considerable.

The law of Maine, regarding domestic harmony, the peace of families and morality of society, is obviously designed to operate upon married persons living together in conjugal relations within its own limits; and it is an evasion of the statute, if not *in fraudem legis,* for one domiciled elsewhere, never having lived there in the conjugal relation, to complain of an absent husband or wife, not only a stranger at the time, but ever previously; and draw the absent party before the tribunals of that state, to be judged by a law under which that party had never lived. The court are of opinion that the divorce is of no force or effect here; that the plaintiff must be deemed a married woman; and that her action cannot be maintained.

*Plaintiff nonsuit.*

*B. F. Hallett & H. A. Scudder,* for the defendant.
*W. Brigham,* for the plaintiff.